# Attachment A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| UNITED STATES OF AMERICA & STATE OF NEW YORK, *ex rel.* MILON NUS, | ) ) ) ) |
| *Plaintiffs and Relator* | ) ) |
| v. | ) |
| HOME FAMILY CARE, INC., ALEXANDER KISELEV & MICHAEL GUREVICH a/k/a MICHAIL GUREVICH a/k/a MIKHAIL GUREVICH Defendants. | ) ) ) ) ) ) |

**ECF Case**
Civil Action No. 10-CV-2490
(Johnson, J.)
(Orenstein, M. J.)

_____

## STIPULATION AND ORDER OF SETTLEMENT

IT IS HEREBY STIPULATED AND ORDERED THAT the plaintiffs' claims against defendants in the above-referenced action are settled in accordance with the following terms and conditions:

### I.  PARTIES

This Stipulation and Order of Settlement (the "Agreement") is entered into between and among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services (collectively, the "United States"), the State of New York (the "State"), acting through the New York State Office of the Attorney General, Medicaid Fraud Control Unit ("MFCU"), Defendants Home Family Care, Inc. ("HFC") and Alexander Kiselev ("Kiselev") (HFC and Kiselev hereafter collectively referred to as the "Defendants"), and relator Milan Nus (the "Relator") (hereafter collectively referred to as the "Parties"), through their authorized representatives.

## II.     PREAMBLE

As a preamble to this Agreement, the Parties agree to the following:

A.     HFC, a for-profit corporation organized under the laws of the State of New York, is a licensed home care services agency with its principal place of business located at 3051 Brighton 3rd Street, Brooklyn, New York 11235.

B.     Kiselev is a resident of New Jersey and is the co-owner and President of HFC.

C.     On June 1, 2010, Relator Nus filed a complaint under the *qui tam* provisions of the federal False Claims Act, 31 U.S.C.  §§ 3730 (b) – (h) and the New York False Claims Act, N.Y. State Fin. Law § 190(2), captioned <u>United States of America, State of New York, *ex rel*. Milan Nus v. Home Family Care, Inc., et al.</u>, in the United States District Court for the Eastern District of New York (Civil Action No. 10-cv-2490) (Johnson, J.) (Orenstein, MJ) (the "Nus Action").

D.     On June 29, 2017, the Office of the Medicaid Inspector General ("OMIG"), pursuant to 18 NYCRR § 518.7 and Section 23.4 of the Medicaid Managed Care/Family Health Plus/HIV Special Needs Plan Contract and Article VII, Section L of the Managed Long Term Care Partial Capitation Contract, requested that the following Managed Care Organizations:  Healthfirst, Aetna Better Health, Centerlight Healthcare, Centers Plan for Healthy Living, Elderplan, Elderserve, Extended MLTC LLC, Guildnet, Integra MLTC, Inc., NorthShore-LIJ Health Plan Inc., Senior Whole Health, and VillageCare Max, withhold from payment, and hold in escrow, an amount equal to fifteen percent (15%) of the Medicaid claims submitted by HFC (the "Withheld Funds") until the withhold is removed (hereinafter, the "June 29 Withhold Request").

E.     On or about September 29, 2016, the United States filed its Notice of Election to Intervene in part in the Nus Action and to file a Complaint-in-Intervention.

F.     On or about September 29, 2016, the State of New York filed its Notice of Election to

2

Intervene and Convert in part in the Nus Action and to file a Complaint-in-Intervention.

G.     On December 19, 2016, the State and the United States Attorney's Office for the Eastern District of New York filed a Joint Complaint-in-Intervention captioned <u>United States of America & State of New York, *ex rel*. Milan Nus v. Home Family Care, Inc., Alexander Kiselev & Michael Gurevich a/k/a Michail Gurevich a/k/a Mikhail Gurevich</u>, in the United States District Court for the Eastern District of New York (the "Government Complaint").

H.     Defendants caused to be submitted to the Medical Assistance Program ("Medicaid") claims for home health care services ("Medicaid Claims") by Certified Home Health Agencies as defined in Article 36 of the Public Health Law Section 3602(3) ("CHHA") and Managed Care Organizations ("MCOs") with which Defendant HFC contracted to provide services, to fiscal agents of the State of New York pursuant to Social Services Law and the Public Health Law of the State of New York during the period from 2008 through the Effective Date of this Agreement ("Claims Period").

I.     These Medicaid Claims were relied upon by fiscal agents or contractors of the State to pay the CHHAs and MCOs which, in turn, paid Defendants for services on dates occurring during the Claims Period.

J.     The United States and the State contend that they have certain civil claims against Defendants under the Federal False Claims Act, 31 U.S.C. §§ 3729-33, *et seq.*, the New York False Claims Act, N.Y. State Fin. Law §§ 189 *et seq.,* other New York statutes and the common law, as a result of Defendants engaging in the following conduct, set forth more fully in the Government Complaint:

During the Claims Period, HFC and Kiselev knowingly submitted or caused to be submitted claims to Medicaid, and received payment thereon, for:

3

(1) home health care services for which Defendants did not maintain reliable documentation establishing that the services had been provided;

(2) home health care services which Defendants knew or should have known had not been provided; and

(3) home health care services which Defendants knew or should have known had been provided by unqualified individuals utilizing identities stolen from properly trained and qualified home health aides (the "Covered Conduct").

K.    To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of claims relating to the Covered Conduct, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

### III.    TERMS AND CONDITIONS

1.    Defendants shall pay to the United States and the State a total settlement amount of Six Million Four Hundred Fifteen Thousand Dollars ($6,415,000), plus applicable accrued interest, if any (referred herein as the "Total Medicaid Settlement Amount").

2.    From this amount, Defendants shall pay to the United States the sum of Two Million Five Hundred Sixty-Six Thousand Dollars, ($2,566,000), plus applicable interest, if any (the "United States Settlement Amount") and to the State the sum of Three Million Eight Hundred Forty-Nine Thousand Dollars ($3,849,000), plus applicable accrued interest, if any (the "State Settlement Amount").

3.    The United States Settlement Amount shall be paid as follows:

  a.  No later than five (5) days after the Effective Date of this Agreement, Defendants shall wire the sum of Two Million Dollars ($2,000,000) to the United States by electronic funds transfer, pursuant to instructions provided by the Office of the United States Attorney for the Eastern District of New York (the "Initial Federal Payment").

b.  The State shall transfer the remaining federal settlement balance of Five Hundred Sixty-Six Thousand Dollars ($566,000) ("Federal Balance") to the United States upon receipt of monies as delineated in Paragraphs 4(b) and 4(e), below.

c.  In the event that Defendants fail to pay the amount provided in Paragraph 3.a within five (5) business days of the date on which such payment is due, Defendants shall be in default of their payment obligations ("Default").  The United States will provide written notice of the Default to Defendants and they shall have the opportunity to cure such Default within five (5) business days from the date of receipt of the notice.  Notice of Default will be delivered to Defendants, or to such other representative, as they shall designate in advance in writing.  If Defendants fail to cure such Default within five (5) business days of receiving the Notice of Default ("Uncured Default"), interest on the United States Settlement Amount shall accrue at the rate of 12% per annum compounded daily from the date of Default on the unpaid amount (principal and interest balance).  Upon an Uncured Default, the United States, at its sole option, may: (i) offset the unpaid balance from any amounts due and owing to Defendants by any department, agency, or agent of the United States at the time of Default; (ii) collect the entire unpaid balance of the United States Settlement Amount (subject to Paragraph 2), plus interest, including 12% interest from the date of Default, and all other amounts due upon the event of Default as specified in this paragraph; (iii) file a civil action for the Covered Conduct; (iv) exercise any other rights granted by law or in equity, including referral of this matter for private collection; or (v) exclude Defendants from participating in all Federal health care programs

pursuant to Paragraph 10, below, until Defendants pay the United States Settlement Amount and State Settlement Amount, applicable interest, and reasonable costs as set forth in this Paragraph 3.  In the event a complaint is filed pursuant to subsection (iii) of this paragraph, Defendants agree not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, res judicata, or similar theories to the allegations in the complaint, except to the extent such defenses were available to Defendants on June 1, 2010.  Defendants agree not to contest any consent judgment, offset, recoupment, and/or collection action undertaken by the United States pursuant to this paragraph, either administratively or in any state or federal court, except that Defendants shall not be precluded from asserting the affirmative defense of payment or miscomputation.  Defendants shall pay to the United States all reasonable costs of collection and enforcement under this paragraph, including attorneys' fees and expenses.

4.   The State Settlement Amount and Federal Balance shall be paid as follows:

   a. No later than five (5) days after the Effective Date of this Agreement, Defendants shall wire the sum of Three Million Dollars ($3,000,000) (the "Initial State Payment") to MFCU by electronic funds transfer, pursuant to instructions provided by MFCU.

   b. The remaining balance of the Total Medicaid Settlement Amount – One Million Four Hundred Fifteen Thousand Dollars ($1,415,000), plus accrued interest, if any – shall be paid as follows:

i.   HFC and Kiselev consent to the transfer and payment to the State of all of the Withheld Funds held in escrow by the MCOs pursuant to the June 29 Withhold Request;

ii.   Within 15 days of the Effective Date of this Agreement, MFCU will request that OMIG direct the MCOs to cease withholding additional funds from claims submitted by HFC pursuant to the June 29 Withhold Request.   Further MFCU will request that the MCOs transfer all Withheld Funds to MFCU within 30 days of the date of the MFCU request.

iii.   All Withheld Funds transferred and paid to the State shall be applied and credited toward Defendants' payment of the Total Medicaid Settlement Amount.

iv.   Defendants agree to cooperate with MFCU, OMIG, other representatives of the State, and the MCOs in effectuating the transfer of the Withheld Funds to the State, including but not limited to executing any documents necessary to effectuate the transfer.

v.   If any Withheld Funds are transferred or paid by the MCOs directly to Defendants before Defendants' full payment of the Total Medicaid Settlement Amount, Defendants agree to notify the State immediately and to remit all Withheld Funds they receive to MFCU by wire transfer or certified check within five (5) business days of their receipt of such Withheld Funds.   Once received by MFCU, these funds will be credited and applied toward payment of the Total Medicaid Settlement Amount.

c.  The State shall transfer the United States share of the Withheld Funds it receives to the United States.

d.  No later than 60 days from the Effective Date of this Agreement, MFCU will provide written notice (the "Written Notice") to Defendants of the total amount of Withheld Funds received by the State as of the date of the Written Notice, by sending the Written Notice via Overnight Mail to Defendants' counsel at the address contained in paragraph 50 herein.

e.  Defendants shall pay the remaining balance, if any, of the Total Medicaid Settlement Amount, after subtracting the Initial State Payment, the Initial Federal Payment, and the total amount of Withheld Funds received by the State as of the date of the Written Notice (hereinafter the "Remaining Balance"), pursuant to the following terms and conditions:

  i.   If the Remaining Balance is less than or equal to Twenty Five Thousand dollars ($25,000) as of the date that the Written Notice is sent, Defendants shall pay the entire Remaining Balance to MFCU by wire transfer or check within 30 days of the date that the Written Notice is sent;

  ii.  If the Remaining Balance is greater than Twenty Five Thousand dollars ($25,000) as of the date that the Written Notice is sent, Defendants may pay:

    1.  The Remaining Balance in one lump sum under the terms described in Paragraph 4.e(i) above; or

8

2. The Remaining Balance, plus simple interest thereon accruing at a rate of 9% per annum from the date that the Written Notice is sent, in monthly installment payments of Twenty-Five Thousand dollars ($25,000) plus interest (the "Installment Payments"), in which case:

   a. The first Installment Payment shall be due within 30 days of the date that the Written Notice is sent; and

   b. Subsequent Installment Payments shall be due on the 15th day of each month following the month when the first Installment Payment is due until the Remaining Balance is fully paid.

iii. All monies paid to the State by Defendants pursuant to Paragraph 4.e shall be applied and credited towards Defendants' payment of the Total Medicaid Settlement Amount.

iv. The State shall transfer the United States share of the Remaining Balance, whether paid in full in a lump sum payment or paid by Installment Payments with interest, to the United States.

f. If, as of the date of the Written Notice, the sum of the Initial State Payment, the Initial Federal Payment, and the total amount of Withheld Funds received by the State exceeds the Total Medicaid Settlement Amount, the State shall remit the excess amount to HFC by check delivered to HFC's counsel within 30 days of the date that the Written Notice is sent.

g. If any additional Withheld Funds are transferred and paid to the State after the date of the Written Notice, the amount of such additional Withheld Funds will be credited toward the Remaining Balance, provided, however, that this will not relieve Defendants of their obligation to continue making monthly Installment Payments in the full amounts due until the Remaining Balance is fully paid pursuant to Paragraph e, above.

5.       In consideration for the State's agreement to accept transfer and payment of the Withheld Funds and the Installment Payments as delineated in Paragraph 4.b and 4.e, above, the Parties agree that the State may immediately file a consent judgment (in the form attached hereto as Attachment A) against Defendants in the amount of Four Million Four Hundred Fifteen Thousand Dollars ($4,415,000), less any monies received, plus all costs of collection, including attorney's fees and expenses incurred equal to ten percent of the total amount owed, post-judgment interest and other proper relief without further notice to Defendants.  The State, in its sole discretion, may exercise any rights granted by law or in equity to collect on the debt.  Defendants agree not to contest any consent judgment, offset, or any collection action undertaken by the State pursuant to this paragraph, either administratively or in any state or federal court.  The State shall take all measures available to it to execute on the consent judgment. Within 30 days of Defendants' full payment of the Total Medicaid Settlement Amount, the State shall file a satisfaction of judgment with respect to the consent judgment in accordance with CPLR § 5020.

6.       In the event that Defendants fail to pay the State Settlement Amount and the Federal Balance, including the Initial State Payment, the Withheld Funds and the Remaining Balance, on or before the due date of any such required payment as set forth in Paragraph 4 above, Defendants shall be in default of this Agreement.  In the event of a default, the entire unpaid amount of the

Total Medicaid Settlement Amount shall be immediately due and payable, and interest shall accrue on the remaining unpaid Total Medicaid Settlement amount at a rate of nine percent per annum until the default is cured.  In the event of a default, the State will provide written notice of the default, to be sent by overnight delivery service to the undersigned attorney for Defendants.  If the default is not cured within seven calendar days after the State sends notice of the default, the State may at its option declare or do any of the following:

    a.  Execute upon the consent judgment provided under Paragraph 5 above;

    b.  Reinstitute an action or actions against Defendants, and any other person, in this court through the Civil Action or an amended pleading;

    c.  Seek specific performance of the Agreement;

    d.  Rescind its agreement to this Agreement and pursue all available remedies;

    e.  Any dismissals agreed to by the State shall be null and void, and the State may declare the Total Medicaid Settlement Amount, referenced in Paragraph 1  above, less any payments already made, immediately due and payable, with unpaid amounts bearing the default rate of interest of nine percent until payment of the Total Medicaid Settlement Amount plus said interest, is made in full;

    f.  Offset the remaining unpaid balance of the Total Medicaid Settlement Amount from any amounts due and owing Defendants by any department, agency or agent of the State at the time of Default, which Defendants hereby agree to and waive any administrative, judicial or other remedies; or

    g.  Exercise any other rights granted by law, or under the terms of this Agreement, or recognizable at common law or in equity.

Acceptance by the State of late payment with interest shall not cure any other Default hereunder.

7.       In the event that the State seeks remedies for collection or enforcement of Defendants' obligations hereunder, and the State substantially prevails in its collection or enforcement action, Defendants shall be responsible for all costs and expenses incurred by the State in connection with that action.

8.       In the event the State opts to rescind this Agreement pursuant to Paragraph 6.d, Defendants expressly agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims that relate to the Covered Conduct, except to the extent such defense was available on June 1, 2010.

9.        In the event the United States and/or the State reinstate an action concerning, or in the event of any criminal prosecution or administrative action relating to, the Covered Conduct, Defendants further waive and will not assert any defenses they may have to any action relating to the Covered Conduct to the extent that such defenses may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the United States Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the United States Constitution, this Agreement bars a remedy sought in such action.  Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Total Medicaid Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

10.      Notwithstanding the foregoing, in the event of Uncured Default as defined in Paragraph 3, above, OIG-HHS may exclude Defendants from participating in all Federal health care programs until Defendants pay the remaining United States Settlement Amount and State Settlement Amount, applicable interest, and reasonable costs, as set forth in Paragraph 2, above.

OIG-HHS will provide written notice of any such exclusion to Defendants.  Defendants waive any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7), and agree not to contest such exclusion either administratively or in any state or federal court.  Reinstatement to program participation is not automatic.  If at the end of the period of exclusion Defendants wish to apply for reinstatement, Defendants must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005.  Defendants will not be reinstated unless and until OIG-HHS approves such request for reinstatement.

**RELEASES**

11.     Subject to the exceptions in Paragraph 13 below (concerning excluded claims), and conditioned upon Defendants full payment of the Total Medicaid Settlement Amount, the United States releases Defendants from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; any statutory provision creating a cause of action for civil damages or civil penalties for which the Civil Division of the Department of Justice has actual and present authority to assert and compromise pursuant to 28 C.F.R. Part O, Subpart I. 0.45(d), or the common law theories of payment by mistake, unjust enrichment, and fraud.

12.     In consideration of the obligations of the Defendants in this Agreement and conditioned upon the Defendants' full payment of the Settlement Amount, the OIG-HHS agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from Medicare, Medicaid, and other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) against the Defendants under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law) or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other

prohibited activities) for the Covered Conduct, except as reserved in this Paragraph and in Paragraph 13 (concerning excluded claims), below.  The OIG-HHS expressly reserves all rights to comply with any statutory obligations to exclude the Defendants from Medicare, Medicaid, and other Federal health care programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the Covered Conduct.  Nothing in this Paragraph precludes the OIG-HHS from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 13, below.

13.     Notwithstanding the releases given in Paragraphs 11 and 12 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

a.     Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b.     Any criminal liability;

c.     Except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from Federal health care programs;

d.     Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.     Any liability based upon obligations created by this Agreement;

f.     Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

g.     Any liability for failure to deliver goods or services due; and

h.     Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

14.     Subject to the exceptions in Paragraph 15 below (concerning excluded claims), in consideration of the obligations of Defendants set forth in this Agreement, conditioned upon

payment in full by Defendants of the Total Medicaid Settlement Amount, and subject to Paragraph 30 below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), the State agrees to release Defendants from any civil monetary claim for the Covered Conduct that the State has or may have against Defendants under the New York False Claims Act, N.Y. State Fin. Law §§ 189 *et seq.*, Executive Law § 63(12), Social Services Law § 145-b, or any other state law, or common law or equity, including equitable theories of payment by mistake, disgorgement, unjust enrichment, breach of contract, and fraud.

15.     Notwithstanding any term of this Agreement, including the releases provided in Paragraph 14, above, specifically reserved and excluded from the scope and terms of this Agreement as to any entity or person are the following claims of the State:

a.   Any civil, criminal or administrative liability arising under New York Tax Law;

b.   Any civil liability that Defendants have or may have under any state statute, regulation or rule not covered by this Agreement;

c.   Any criminal liability;

d.   Any administrative liability, including mandatory or permissive exclusion from the Medicaid program;

e.   Any liability to the State (or its agencies) for any conduct other than the Covered Conduct;

f.   Any liability of individuals other than Defendant Alexander Kiselev;

g.   Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

      h.   Any liability for failure to deliver goods or services due;

      i.   Any liability for personal or property damage or for other consequential damages arising from the covered conduct;

      j.   Any patient abuse or neglect; and

      k.   Any liability based on obligations created by this Agreement.

16.     In consideration of the obligations of Defendants set forth in this Agreement, conditioned upon payment in full by Defendants of the Total Medicaid Settlement Amount, Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, agrees to release Defendants from any civil monetary claim the Relator has or may have for himself for the Covered Conduct against Defendants or on behalf of the United States or the State under the federal False Claims Act, 31 U.S.C. §§ 3729-3733, or the New York False Claims Act, N.Y. State Fin Law §§ 189 *et seq.*

17.     Defendants fully and finally release the United States, the State, and their agencies, current and former employees, officers, servants and agents from any claims (including attorneys' fees, costs and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the United States, the State, or their agencies, current and former employees, officers servants, and agents related to the matters arising from the Covered Conduct, the Nus Action, the Government Complaint, the MFCU Investigation and any prosecution thereof by the United States and the State, and this Agreement.

18.     In consideration of the obligations of the Relator set forth in this Agreement, Defendants, on behalf of themselves, and their officers, agents and employees fully and finally release Relator and his respective heirs, successors, attorneys, agents, and assigns from any claims that Defendants have asserted, could have asserted, or may assert in the future against Relator and

his heirs, successors, attorneys, agents and assigns related to the Covered Conduct, the Nus Action and Relator's investigation and prosecution thereof.

19.     Relator and his heirs, successors, attorneys, agents and assigns shall not object to this Agreement and agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B) and N.Y. State Fin. Law §190(5)(b)(ii) and, Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, fully and finally releases, waives, and forever discharges the United States and the State, their officers, agents, and employees, from any claims arising from or relating to 31 U.S.C. §§ 3729-33, *et seq.* and N.Y. State Fin. Law §190, from any claims arising from the filing of the Civil Action, from any other claims for a share of the Total Medicaid Settlement Amount, and in full settlement of any claims Relator may have against the United States and the State under this Agreement. This Stipulation does not resolve nor in any manner affect any claims that the State has or may have against Relator arising under the State's tax laws, or any claims arising under this Agreement.

20.     Payments by the United States and the State to the Relator, as provided for by § 3730(d)(1) and N.Y. State Fin. Law §190(6)(a), are not included in this Agreement, and will be the subject of a separate agreement. The United States and the Relator have agreed on a Relator's share of the United States Settlement Amount of 17%; the State and the Relator have agreed on a Relator's share of the State Settlement Amount of 17%. Payments made to the Relator pursuant to § 3730(d)(1) and N.Y. State Fin. Law §190(6)(a) are contingent upon the United States and the State receiving the Settlement Amount payments set forth in Paragraph 3 and 4 above. It is expressly understood and agreed that the United States and the State in no way promise, guarantee, nor are liable to Relator for the collection or payment of any funds pursuant to this Agreement or

17

the payment of Relator's share except as provided herein for funds actually collected and received by the United States and the State. Contingent upon actual receipt of payments, including accrued interest, if any, as set forth in Paragraphs 3 and 4, the United States and the State shall promptly inform Relator's counsel of such payment's receipt, and pay to Relator any agreed-upon Relator's share as soon as feasible after receipt, in accordance with payment instructions to be provided in writing by Relator's counsel.

**OTHER PROVISIONS**

21.     Kiselev and HFC hereby agree not to offer or accept an offer to sell all or any part of HFC's business operations, or ownership thereof, without giving thirty days prior notice to the New York State Attorney General, who, in his sole discretion, may require reasonable assurance that all payments due under this Agreement shall be made. Should all or any portion of HFC be sold on or before full payment to the State of amounts due and owing under this Agreement pursuant to Paragraph 4 above, payment of the Remaining Balance shall be accelerated and shall be paid upon closing of such sale. Further, no current or former officer, director, employee, member, manager or shareholder of HFC may accept or receive any remuneration or consideration relating to any such sale, including, but not limited to, any portion of the proceeds of such sale, directly or indirectly, until the Remaining Balance is paid in full.

22.     The Total Medicaid Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by Medicaid, or any state payor, related to the Covered Conduct; and Defendants agree not to resubmit to Medicaid, any MCO or any state payor any previously denied claims related to the Covered Conduct, and agree not to appeal any such denial of claims.

23.      Defendants agree that they waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

24.      Defendants agree that all costs, including legal fees, incurred by or on behalf of themselves and any associated person or entity in connection with (1) the MFCU Investigation; (2) Defendants' investigation and defense of this matter (including attorneys' fees and expenses); (3) the negotiation and performance of this Agreement; (4) the payment pursuant to this Agreement; (5) preparing and submitting any reports required under this Agreement; and (6) the negotiation of, and obligations undertaken concerning the retention of an Independent Review Organization pursuant to Appendix A to this Agreement, are unallowable costs on government contracts and under the Medicaid Program.

25.      Defendants will not charge such unallowable costs directly or indirectly to the Medicaid Program, or seek payment for such unallowable costs through any cost report, cost statement, information statement, or payment request submitted by any Medicaid Provider to the Medicaid Program.  Defendants further agree that within ninety days of the entry of this Agreement, it will identify to Medicaid fiscal agents any unallowable costs included in payments previously sought from the New York State Medicaid Program, including, but not limited to, payments sought in any cost reports, cost statement, information reports, or payment requests already submitted by Defendants, and will request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of those unallowable costs.  Defendants agree that the State, at a minimum, will be entitled to recoup from Defendants any overpayment plus applicable interest

19

and penalties as a result of the inclusion of such unallowable costs on previously-submitted cost reports, cost statements, information reports, or payment requests.

26.     This Agreement is intended to be for the benefit of the Parties to this Agreement only, and by this instrument the Parties to this Agreement do not release any claims against any other person or entity, except as expressly provided by this Agreement.

27.     Defendants shall maintain custody of, or make arrangements to have maintained, all documents and records related to the Covered Conduct for a period of six years after completion of the payment of the Total Medicaid Settlement Amount or the period required by 18 N.Y.C.R.R. § 504.3 and any applicable provider manual, whichever is later.

28.     Defendants agree that this Agreement is not punitive in purpose or effect.

29.     HFC expressly warrants that it has reviewed its financial situation and that it is currently solvent within the meaning of 11 U.S.C §§ 547(b)(3), and that it currently believes it will remain solvent following its payment to the United States and to the State of New York of the Total Medicaid Settlement Amount.  Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Defendants, within the meaning of 11 U.S.C. § 547(c) (1), and (b) have concluded that these mutual promises, covenants, and obligations do, in fact, constitute such contemporaneous exchange.  Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Defendants were or became indebted to on after the date of this transfer, all within the meaning of 11 U.S.C. § 548(a) (1).

30.     If within ninety-one days of the Effective Date of this Agreement or of any payment made under this Agreement, Defendants commence, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of Defendants' debts, or seeking to adjudicate Defendants as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for Defendants or for all or any substantial part of Defendants' assets, Defendants agree as follows:

a.    Defendants shall provide the MFCU Special Deputy Attorney General immediate notice by hand delivery, express courier followed by postage-prepaid mail at the address contained in paragraph 50 herein.

b.    Payment of the State Settlement Amount and Federal Balance shall be accelerated and the full amount deemed due and owing.

c.    Defendants' obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and Defendants shall not argue or otherwise take the position in any such case, proceeding, or action that: (i) Defendants' obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) Defendants were insolvent at the time this Agreement was entered into, or became insolvent as a result of the payments made to the United States or the State; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to Defendants.

d.    If any of Defendants' obligations hereunder are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the State, at its sole option, may rescind the releases in this

21

Agreement and bring any civil and/or administrative claim, action, or proceeding against Defendants for the claims that would otherwise be covered by the releases provided in Paragraphs 11 and 14, above.  Defendants agree that (i) any such claims, actions, or proceedings brought by the State are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this paragraph, and Defendants shall not argue or otherwise contend that the State's claims, actions, or proceedings are subject to an automatic stay; (ii) Defendants shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppels, or similar theories, to any such civil or administrative claims, actions, or proceedings that are brought by the State within sixty calendar days of written notification to Defendants that the releases have been rescinded pursuant to this paragraph, except to the extent such defenses were available on June 1, 2010 and (iii) the State has a valid claim against Defendants in an amount no less than $28,905,000, plus civil penalties to be determined by the Court, and the State may pursue its claim in the case, action or proceeding referenced in the first clause of this paragraph, as well as any other case, action or proceeding.

e.  Defendants acknowledge that their agreements in this paragraph are provided in exchange for valuable consideration provided in this Agreement.

31.    Except as expressly provided to the contrary in this Agreement, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

32.    <u>Independent Review Organization</u>.  HFC shall retain an entity (or entities) (the "Independent Review Organization" or "IRO"), acceptable to MFCU, to provide an ongoing independent review of HFC's adherence to all Federal and State laws, rules, regulations and requirements of the New York State Medicaid program and the terms of this Agreement.  The applicable requirements relating to the IRO are outlined in Appendix A to this Agreement, which is incorporated by reference.

33.    <u>Compliance Officer</u>.  Within 60 days of the Effective Date of this Agreement, HFC shall appoint an individual to serve in the position of Compliance Officer to perform the duties set forth in this Paragraph below.  HFC shall create the position of Compliance Officer if such position does not already exist. HFC shall maintain the position of Compliance Officer for the term of the IRO's review pursuant to Paragraph 32 and Appendix A to this Agreement, or for 3 years, whichever is longer.  The Compliance Officer's duties shall include ensuring that HFC complies with all applicable laws, rules and regulations of the Medicaid program and the terms of this Agreement.   The appointment of the Compliance Officer shall be subject to the following terms and conditions:

a.    HFC shall not appoint any individual as Compliance Officer pursuant to this Agreement if that individual has ever served in the capacity of a compliance officer or held the title of compliance officer at HFC at any time prior to the Effective Date of this Agreement; and

b.    HFC shall not appoint any individual as Compliance Officer pursuant to this Agreement who has ever held the title of Coordinator or acted in the capacity of a coordinator at HFC at any time prior to the Effective Date of this Agreement.

c.   If HFC terminates the employment of the individual serving as Compliance Officer, HFC will give notice to MFCU and the IRO within five (5) days of the termination.  HFC will hire a new Compliance Officer within forty-five (45) days of the termination.

34.     This Agreement is governed by the laws of the New York State without regard to choice of law or conflict of laws principles.  The Parties agree that the exclusive jurisdiction and venue for any dispute arising between and among the Parties under this Agreement will be the United States District Court for the Eastern District of New York. Notwithstanding the foregoing, the State does not waive any objection it may have that a claim against Defendants for payment by the State is properly vested in the New York State Court of Claims.

35.     Any failure by the United States and/or State to insist upon the strict performance of any of the provisions of this Agreement shall not be deemed a waiver of any of the provisions hereof, and the United States and/or State, notwithstanding that failure, shall have the right thereafter to insist upon strict performance of any and all of the provisions of this Agreement.

36.     If any part of this Agreement shall for any reason be found or held invalid or unenforceable by any court of competent jurisdiction other than payment of the Total Medicaid Settlement Amount, such invalidity or unenforceability shall not affect the remainder of this Agreement, which shall survive and be construed as if such invalid or unenforceable part had not been contained herein.

37.     The terms of this Agreement shall remain effective notwithstanding the death or incapacity of any person, or any appeal, collateral attack, or any challenge to any criminal charge, conviction, plea or sentencing of any person, including but not limited, to the reversal, modification, or dismissal of all or any portion of such charge, conviction, plea or sentence, or the charging, conviction, plea or sentencing of any other person.

38.      This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended, changed, modified or waived except in writing signed by the Parties affected by said amendment, change or modification.

39.      Defendants acknowledge and represent that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever and upon due deliberation with the advice of counsel.

40.      Relator acknowledges and represents that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever, and that the Relator has entered into this Agreement upon due deliberation with the advice of counsel.

41.      The undersigned counsel and other signatories represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

42.      This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.  Facsimiles and electronically transmitted versions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

43.      This Agreement is binding on Defendants' successors, transferees, heirs and assigns.

44.      This Agreement is binding on Relator's successors, transferees, heirs and assigns.

45.      The captions in this Agreement are provided for reference only and are not operative terms of this Agreement.

46.      For purposes of construction, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

47.      Defendants agree not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any finding in this Agreement or creating the impression that this Agreement is without factual basis.  Nothing in this paragraph affects Defendants': (a) testimonial obligations; or (b) right to take legal or factual positions in defense of litigation or other legal proceedings to which the State is not a party.

48.      Within thirty days after receipt of the Initial State Payment and the Initial Federal Payment described in Paragraphs 3(a) and 4(a) above, the United States, State and Relator shall file a Joint Notice of Dismissal Without Prejudice of the Civil Action pursuant to Fed. R. Civ. P. 41(a).  Once Defendants have completed all payments required under this Agreement, with any applicable interest, the United States, State and Relator shall file a Joint Notice of Partial Dismissal in the Civil Action pursuant to Fed. R. Civ. P. 41(a) dismissing their claims for the Covered Conduct with prejudice as to the United States, the State and Relator, and dismissing all remaining allegations in Relator's complaint without prejudice as to the United States and the State, and with prejudice as to the Relator.

49.      All payments to the State by check pursuant to this Agreement shall be made by cashier's check made payable to the MFCU Restitution Fund, and delivered by Overnight Mail to New York State Attorney General, Medicaid Fraud Control Unit, Attn: Finance Department, 120 Broadway, 13th Floor, New York, New York 10271.

50.      Any notices pursuant to this Agreement shall be in writing and shall, unless expressly provided otherwise herein, be given by overnight mail, and shall be addressed as follows:

**IF TO THE UNITED STATES:**

United States Attorney's Office
Eastern District of New York
c/o Elliot Schachner

271 Cadman Plaza East
Brooklyn, NY 11201

**IF TO THE ATTORNEY GENERAL and the STATE:**

New York State Attorney General
Medicaid Fraud Control Unit
Attn: Special Deputy Attorney General, Civil Enforcement Division
120 Broadway, 13th Floor
New York, New York 10271

**IF TO DEFENDANTS:**

Caroline P. Wallitt, Esq.
Kirschenbaum & Kirschenbaum, P.C.
200 Garden City Plaza, Suite 500~ 315 (CPW)
Garden City, NY 11530

**IF TO RELATOR:**

Alan Lebenbaum, Esq.
156 Beach 139th St.
Belle Harbor, NY 11694

    51.    The Effective Date of this Agreement shall be the date of signature of the last

signatory to this Agreement ("Effective Date of this Agreement").


_A. Kiselev_                              Dated: January 22, 2018
**ALEXANDER KISELEV**
**Individually**


**HOME FAMILY CARE, INC.**

_A. Kiselev_                              Dated: January 22, 2018
**By: Alexander Kiselev**
      **President**

27

**APPROVED AS TO FORM:**

Dated: January 23, 2018

**Caroline P. Wallitt, Esq.**
Kirschenbaum & Kirschenbaum, P.C.
200 Garden City Plaza, Suite 315
Garden City, NY 11530
T: (516) 747-6700 ext. 305
*Attorneys for Alexander Kiselev and Home Family Care, Inc.*

**RICHARD P. DONOGHUE**
United States Attorney
Eastern District of New York
Attorney for United States
271 Cadman Plaza East
Brooklyn, New York 11201

By: _____          Dated: January __, 2018

    Elliot M. Schachner
    Assistant U.S. Attorney
    (718) 254-6053

_____          Dated: January __, 2018

**Lisa M. Re**
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services
(202) 205-9366

**ERIC T. SCHNEIDERMAN**
**ATTORNEY GENERAL OF THE STATE OF NEW YORK**
*Attorneys for the State of New York*

By: _____          Dated: January __, 2018

    Andrew Gropper
    Special Assistant Attorney General
    Medicaid Fraud Control Unit
    120 Broadway – Civil Unit
    New York, New York 10271-0007
    (212) 417-5395

28

**APPROVED AS TO FORM:**

Dated: January ___, 2018

Caroline P. Wallitt, Esq.
Kirschenbaum & Kirschenbaum, P.C.
200 Garden City Plaza, Suite 315
Garden City, NY 11530
T: (516) 747-6700 ext. 305
*Attorneys for Alexander Kiselev and Home Family Care, Inc.*

**RICHARD P. DONOGHUE**
United States Attorney
Eastern District of New York
Attorney for United States
271 Cadman Plaza East
Brooklyn, New York 11201

By: _____      Dated: January 23, 2018
Elliot M. Schachner
Assistant U.S. Attorney
(718) 254-6053

_____      Dated: January 23, 2018
Lisa M. Re
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services
(202) 205-9366

**ERIC T. SCHNEIDERMAN**
**ATTORNEY GENERAL OF THE STATE OF NEW YORK**
*Attorneys for the State of New York*

By: _____      Dated: January 22, 2018
Andrew Gropper
Special Assistant Attorney General
Medicaid Fraud Control Unit
120 Broadway – Civil Unit
New York, New York 10271-0007
(212) 417-5395

28

**MILAN NUS**
**Relator**

Dated: January 13, 2018

**APPROVED AS TO FORM:**

Dated: January 23, 2018

**Alan Lebenbaum, Esq.**
156 Beach 139th St
Belle Harbor, NY 11694
(917) 826-1371
*Attorney for Relator*

**SO ORDERED:**

Brooklyn, New York
January ___, 2018

_____

**THE HONORABLE STERLING JOHNSON, JR.**
**UNITED STATES DISTRICT JUDGE**

29

# Appendix A
# Independent Review Organization

This Appendix contains the requirements relating to the Independent Review Organization (IRO) required by Paragraph 32 of the Agreement.

A. <u>IRO Engagement</u>

1.      Within 45 days of the Effective Date of the Agreement, Home Family Care, Inc. ("HFC") shall engage at its own expense an IRO that possesses the qualifications set forth in Paragraph B, below, to perform the responsibilities in Paragraph C, below. The IRO shall conduct the review in a professionally independent and objective fashion, as set forth in Paragraph F.

2.       HFC and the proposed IRO shall submit the following information to MFCU for review:

      a. The identity and relevant qualifications of the proposed IRO;
      b. A summary and description of the nature, scope and duration of any prior or existing relationships, engagements and agreements between the parties;
      c. Any additional information requested to assist MFCU in its review.

3.      Within 30 days after MFCU receives all of the required/requested information, MFCU will notify HFC whether the proposed IRO is acceptable or not acceptable. MFCU may reject the proposed IRO in its sole discretion. If MFCU notifies HFC that the IRO is acceptable, HFC may engage the IRO.

4.      Any agreement between the IRO and HFC shall require the IRO to retain and make available to MFCU, upon request, all work papers, supporting documentation, draft reports and correspondence between it and HFC. The IRO shall have the right to communicate with MFCU, and other state or federal agencies without notice to, or the consent of, HFC.

5.       HFC shall give the IRO full access, without limitation and at the IRO's sole discretion, to all of its records, facilities and personnel. The IRO shall also have the right to contact any HFC client without notice to HFC.

B. <u>IRO Qualifications</u>

The IRO shall:

1.      Assign individuals to conduct the engagement who have expertise in the regulatory requirements of Licensed Home Care Service Agencies and the New York Medicaid program;

2.      Assign individuals who have experience in designing, implementing, maintaining and evaluating the effectiveness of a compliance program; and

     3.    Assign sufficient staff and resources to conduct the reviews and produce the required reports on a timely basis.

C. IRO Responsibilities

1.    The IRO shall conduct regular reviews to ensure HFC abides by all Federal and State laws, rules and regulations of the New York Medicaid program, and the terms of this Agreement.

2.    The IRO's responsibilities shall include, but shall not be limited to, conducting regular reviews to ensure that HFC only bills for home health care services that are actually rendered by qualified individuals, and that HFC retains reliable documentation that such services were rendered.

3.    Where the IRO deems it appropriate, the IRO may conduct audits and investigations that are not disclosed to HFC until their completion and ensuing report.

4.    The IRO shall review work plans and methods that meet acceptable professional standards which are reasonably calculated to test whether HFC is complying with the terms of this Appendix and following the applicable Medicaid laws, rules, regulations and reimbursement guidelines.

5.    If in doubt of the application of a particular Medicaid law, policy or regulation, the IRO shall request clarification from the appropriate authority.

6.    The IRO shall respond to all MFCU inquiries in a prompt, objective, and factual manner.

7.    The IRO shall prepare timely reports that include all the information required by this Appendix.

D. IRO Work Plans

    Within 60 days after MFCU's approval of the IRO, the IRO shall develop a proposed work plan for the first year and shall deliver it to MFCU for review. Within 30 days of the beginning of each remaining year, the IRO shall deliver to MFCU a proposed work plan for that period. Within 30 days after MFCU receives the proposed work plan, MFCU will notify HFC and the IRO whether the work plan is acceptable. Absent notification from MFCU that the work plan is unacceptable by the expiration of the 30 day period, the work plan shall be deemed accepted and the IRO may conduct the review for the applicable period using the work plan.

E. IRO Reports/Periodic Reports

    The IRO shall make quarterly written reports to MFCU that assess HFC's compliance with the requirements of the New York Medicaid program and this Agreement, including:

1. Whether HFC has adopted and maintains an effective compliance program in accordance with New York Medicaid laws, rules and regulations.
2. Whether HFC has adopted and maintains an effective Electronic Visit Verification System and other appropriate attendance verification procedures to ensure that home health care aides are present with and providing services to HFC clients during scheduled shifts.
3. Whether HFC is requiring all HFC aides and clients to comply with HFC's attendance verification procedures, including but not limited to the use of an Electronic Visit Verification System.
4. Whether HFC has adopted comprehensive procedures and mechanisms to ensure that its aides and other employees are complying with HFC's attendance verification procedures, including appropriate mechanisms to assess the veracity of aides' explanations for their failure to utilize HFC's Electronic Attendance Verification System.
5. Whether HFC has adopted effective mechanisms to ensure that services are provided by qualified individuals, including ensuring that individuals do not provide services to HFC clients using stolen identities.
6. Whether HFC is maintaining reliable documentation necessary to disclose fully the extent of care, services and supplies provided to HFC clients.
7. Whether HFC is fully cooperating with the IRO.

The IRO's first report shall be due 90 days after the IRO work plan is accepted or deemed accepted pursuant to Paragraph D above. Subsequent reports shall be due every 90 days thereafter. The IRO shall retain its reports for six years from the expiration of the IRO's term pursuant to Paragraph G of this Appendix.

F. IRO Independence and Objectivity

The IRO must perform the Review in a professionally independent and objective fashion, as appropriate to the nature of the engagement, taking into account any other business relationships or engagements that may exist between the IRO and HFC. Upon engagement and included as part of every submission to MFCU, the IRO shall certify to this independence and objectivity.

G. Term of the IRO

The term of the IRO shall expire three years from the Effective Date of this Agreement, unless extended. MFCU in its sole discretion may extend the IRO retention period for up to two additional years (five years in total) if it determines that continued retention of an IRO is necessary to ensure that HFC abides by all Federal and State laws, rules and regulations of the New York Medicaid program and the terms of this Agreement. MFCU shall provide written notice to HFC of its intention to extend the IRO retention period (the "Notice of Extension") at least 30 days before the retention period is extended by sending the Notice of Extension to

HFC's counsel at the address listed in Paragraph 50 of this Agreement by overnight mail.  HFC may provide a written response to the Notice of Extension by sending the response to the address for the Attorney General and State listed in Paragraph 50 of this Agreement by overnight mail within 15 days of the date of that the Notice of Extension is sent.  Notwithstanding the foregoing, the MFCU shall have the right to extend the IRO retention period in its sole discretion, and the MFCU's decision shall not be subject to review or reconsideration.

## H. <u>MFCU Removal and Replacement of IRO</u>

In the event that MFCU has reason to believe that the IRO does not possess the qualifications described in Paragraph B, is not independent and objective as set forth in Paragraph F, or has failed to carry out its responsibilities as described in this Appendix, MFCU may, at its sole discretion, remove the IRO and require HFC to engage a new IRO in accordance with Paragraph A of this Appendix.

**Attachment A to Home Family Care/Alexander Kiselev Settlement
Agreement- Consent Judgments**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
STATE OF NEW YORK,

                        Plaintiff,

           -  against -

HOME FAMILY CARE, INC.

                        Defendant
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Index No. _____

**JUDGMENT**

      Upon reading and filing the annexed Affidavit of Confession of Judgment sworn to the ____ of January, 2018, confessing judgment in the sum of $4,415,000.

      NOW, upon motion of Eric T. Schneiderman, Attorney General of the State of New York, attorney for the State of New York, by Andrew Gropper, Special Assistant Attorney General, Medicaid Fraud Control Unit, of counsel, it is

      ADJUDGED that the plaintiff the State of New York, maintaining a place of business at 120 Broadway, New York, New York 10271-0007, recover of the defendant, Home Family Care, Inc., with its principal place of business at 3051 Brighton 3rd Street, Brooklyn, New York, in the County of Kings, State of New York,  the sum $4,415,000, less any monies received by the plaintiff; together with costs and disbursements as taxed in the sum of $_____, making it all the sum of $_____; and that plaintiffs have execution thereof.

      Judgment entered this ____ day of January 2018.

                                    _____
                                         CLERK

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

STATE OF NEW YORK,

                             Plaintiff,                 Index No. _____

                                             **AFFIDAVIT OF CONFES-**
                                             **SION OF JUDGMENT**

                    - against -

HOME FAMILY CARE, INC.

                             Defendant
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STATE OF NEW YORK    )
                         ) ss.:
COUNTY OF Kings    )

ALEXANDER KISELEV, being duly sworn, deposes and says:

     I am the President of HOME FAMILY CARE, INC. ("HFC"), and I am thus authorized to execute this Affidavit of Confession of Judgment on behalf of HFC.

     HFC'S principal business address is 3051 Brighton 3rd Street, Brooklyn, New York 11235.

     I hereby confess judgment against HFC, and authorize entry thereof in favor of plaintiff the State of New York against HFC in the sum of Four Million Four Hundred Fifteen Thousand Dollars and zero cents ($4,415,000).

     I hereby authorize entry of judgment against HFC in Kings County, New York, or in any County in which HFC owns property.

     This confession of judgment is to secure and satisfy an obligation to pay a judgment to the plaintiff State of New York.

On or about January 22, 2018,  pursuant to a written Settlement Agreement (the "Settlement Agreement"), I agreed on behalf of HFC to repay plaintiff State of New York the sum of Four Million Four Hundred Fifteen Thousand Dollars and zero cents ($4,415,000).

Thus, on behalf of HFC, I have agreed that HFC shall make payment to the State of New York in the amount of Four Million Four Hundred Fifteen Thousand Dollars and zero cents ($4,415,000), under the terms of the Settlement Agreement, a copy of which is attached to this Affidavit of Confession.

I expressly authorize entry of judgment based on this Affidavit of Confession of Judgment against HFC at any time pursuant to the terms of the Settlement Agreement.

This debt to the State is a non-dischargeable debt under 11 U.S.C. §§523 and 1328.

Alexander Kiselev
President
HOME FAMILY CARE, INC.

Sworn to before me this

22 day of January, 2018

Notary Public

MARINA TKACHUK
Commissioner of Deeds
City of New York - No. 2-12205
Certificate Filed in Kings County
Commission Expires June , 20 19

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
STATE OF NEW YORK,

                         Plaintiff,

         -   against -

ALEXANDER KISELEV

                        Defendant
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Index No. _____

**JUDGMENT**

      Upon reading and filing the annexed Affidavit of Confession of Judgment sworn to the ____ of January, 2018, confessing judgment in the sum of $4,415,000.

      NOW, upon motion of Eric T. Schneiderman, Attorney General of the State of New York, attorney for the State of New York, by Andrew Gropper, Special Assistant Attorney General, Medicaid Fraud Control Unit, of counsel, it is

      ADJUDGED that the plaintiff the State of New York, maintaining a place of business at 120 Broadway, New York, New York 10271-0007, recover of the defendant, Alexander Kiselev, residing at _____, in the County of ____, State of New Jersey, the sum $4,415,000, less any monies received by the plaintiff; together with costs and disbursements as taxed in the sum of $ _____, making it all the sum of $_____; and that plaintiffs have execution thereof.

      Judgment entered this ____ day of January 2018.

                                    _____
                                         CLERK

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

STATE OF NEW YORK,

                    Plaintiff,

            - against -

ALEXANDER KISELEV,

                    Defendant

Index No. _____

**AFFIDAVIT OF CONFES-
SION OF JUDGMENT**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

STATE OF NEW YORK   )
                     ) ss.:
COUNTY OF Kings    )

ALEXANDER KISELEV, being duly sworn, deposes and says:

I reside at 8 Embry Farm Road, Marlboro, NJ 07746

I hereby confess judgment against myself, and authorize entry thereof in favor of plaintiff the State of New York against myself in the sum of Four Million Four Hundred Fifteen Thousand Dollars and zero cents ($4,415,000).

I hereby authorize entry of judgment against myself in Kings County, New York, or in any County in which I own property.

This confession of judgment is to secure and satisfy an obligation to pay a judgment to the plaintiff State of New York.

On or about January 22, 2018, pursuant to a written Settlement Agreement (the "Settlement Agreement"), I, ALEXANDER KISELEV, agreed to repay plaintiff State of New York the sum of Four Million Four Hundred Fifteen Thousand Dollars and zero cents ($4,415,000).

Thus, I ALEXANDER KISELEV, have agreed that I shall make payment to the State of New York in the amount Four Million Four Hundred Fifteen Thousand Dollars and zero cents ($4,415,000), under the terms of the Settlement Agreement, a copy of which is attached to this Affidavit of Confession.

I expressly authorize entry of judgment based on this Affidavit of Confession of Judgment against myself at any time pursuant to the terms of the Settlement Agreement.

This debt to the State is a non-dischargeable debt under 11 U.S.C. §§523 and 1328.

_____
Alexander Kiselev

Sworn to before me this

__22__ day of January, 2018

_____
Notary Public

MARINA TKACHUK
Commissioner of Deeds
City of New York - No. 2-12205
Certificate Filed in Kings County
Commission Expires _July_ , 20 _19_

2