# Attachment B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| UNITED STATES OF AMERICA & | ) |
| STATE OF NEW YORK, | ) |
| *ex rel.* MILON NUS, | ) |
| | ) |
| *Plaintiffs and Relator* | ) |
| | ) |
| v. | ) |
| HOME FAMILY CARE, INC., | ) |
| ALEXANDER KISELEV & | ) |
| MICHAEL GUREVICH a/k/a | ) |
| MICHAIL GUREVICH a/k/a | ) |
| MIKHAIL GUREVICH | ) |
| Defendants. | ) |
| | ) |

**ECF Case**
Civil Action No. 10-CV-2490
(Johnson, J.)
(Orenstein, M. J.)

_____

## STIPULATION AND ORDER OF SETTLEMENT

IT IS HEREBY STIPULATED AND ORDERED THAT the plaintiffs' claims against defendants in the above-referenced action are settled in accordance with the following terms and conditions:

## I.     PARTIES

This Stipulation and Order of Settlement (the "Agreement") is entered into between and among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services (collectively, the "United States"), the State of New York (the "State"), acting through the New York State Office of the Attorney General, Medicaid Fraud Control Unit ("MFCU"), Defendant Michael Gurevich a/k/a Michail Gurevich a/k/a Mikhail Gurevich ("Gurevich"), and relator Milan Nus (the "Relator") (hereafter collectively referred to as the "Parties"), through their authorized representatives.

## II.     PREAMBLE

As a preamble to this Agreement, the Parties agree to the following:

A.     Gurevich is a resident of Florida and was formerly a Vice President of Defendant Home Family Care, Inc. ("HFC").

B.     On June 1, 2010, Relator Nus filed a complaint under the *qui tam* provisions of the federal False Claims Act, 31 U.S.C.  §§ 3730 (b) – (h) and the New York False Claims Act, N.Y. State Fin. Law § 190(2), captioned United States of America, State of New York, *ex rel*. Milan Nus v. Home Family Care, Inc., et al., in the United States District Court for the Eastern District of New York (Civil Action No. 10-cv-2490) (Johnson, J.) (Orenstein, MJ) (the "Civil Action").

C.     On or about September 29, 2016, the United States filed its Notice of Election to Intervene in part in the Civil Action and to file a Complaint-in-Intervention.

D.     On or about September 29, 2016, the State of New York filed its Notice of Election to Intervene and Convert in part in the Civil Action and to file a Complaint-in-Intervention.

E.     On December 19, 2016, the State and the United States Attorney's Office for the Eastern District of New York filed a Joint Complaint-in-Intervention in the Civil Action captioned United States of America & State of New York, *ex rel*. Milan Nus v. Home Family Care, Inc., Alexander Kiselev & Michael Gurevich a/k/a Michail Gurevich a/k/a Mikhail Gurevich, in the United States District Court for the Eastern District of New York (the "Government Complaint").

F.     Gurevich, in his role as Vice President of HFC, caused to be submitted to the Medical Assistance Program ("Medicaid") claims for home health care services ("Medicaid Claims") by Certified Home Health Agencies as defined in Article 36 of the Public Health Law Section 3602(3) ("CHHA") and Managed Care Organizations ("MCOs") with which Defendant HFC contracted to provide services, to fiscal agents of the State of New York pursuant to Social Services Law and

2

the Public Health Law of the State of New York during the period from 2008 through November 30, 2014 ("Claims Period").

G.       These Medicaid Claims were relied upon by fiscal agents or contractors of the State to pay the CHHAs and MCOs which, in turn, paid HFC for services on dates occurring during the Claims Period.

H.       Gurevich submitted financial affidavits to the United States and the State, sworn to on or about August 9, 2017 (the "Financial Affidavits"), and submitted additional materials supporting these affidavits.

I.       Gurevich hereby reaffirms that the information in the Financial Affidavits and the additional supporting materials is true and correct and that he has had no material increase in his financial net worth since the execution of the Financial Affidavits.

J.       The United States and the State are entering into this Agreement in reliance upon the representations made by Gurevich in the Financial Affidavits and in this Agreement.

K.       The United States and the State contend that they have certain civil claims against Gurevich under the Federal False Claims Act, 31 U.S.C. §§ 3729-33, *et seq.*, the New York False Claims Act, N.Y. State Fin. Law §§ 189 *et seq.,* other New York statutes and the common law, as a result of Gurevich and the other Defendants named in the Government Complaint engaging in the following conduct, set forth more fully in the Government Complaint, which contentions are summarized as follows:

> During the Claims Period, Gurevich, in his role as Vice President of HFC, knowingly caused to be submitted claims to Medicaid, for:
>
>> (1) home health care services for which HFC did not maintain reliable documentation establishing that the services had been provided; and
>>
>> (2) home health care services which Gurevich knew or should have known had not been provided (the "Covered Conduct").

3

L.      To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of claims relating to the Covered Conduct, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

## III.    TERMS AND CONDITIONS

1.      Gurevich shall pay to the United States and the State a total settlement amount of One Hundred Thousand Dollars ($100,000), plus applicable accrued interest, if any (referred to herein as the "Total Medicaid Settlement Amount").

2.      From this amount, Gurevich shall pay to the United States the sum of Forty Thousand Dollars ($40,000), (the "United States Settlement Amount") and to the State the sum of Sixty Thousand Dollars ($60,000), (the "State Settlement Amount").

3.      The United States Settlement Amount shall be paid as follows:

  a.  No later than five (5) days after the Effective Date of this Agreement, Gurevich shall deliver by overnight mail a cashier's check in the amount of Forty Thousand Dollars ($40,000), pursuant to instructions provided by the Office of the United States Attorney for the Eastern District of New York.

  b.  In the event that Gurevich fails to pay the amount provided in Paragraph 3.a within five (5) business days of the date on which such payment is due, Gurevich shall be in default of his payment obligations ("Default").  The United States will provide written notice of the Default to Gurevich and he shall have the opportunity to cure such Default within five (5) business days from the date of receipt of the notice.  Notice of Default will be delivered to Gurevich, or to such other representative, as he shall designate in advance in writing.  If Gurevich fails to cure such Default within five (5) business days of receiving the Notice of

4

Default ("Uncured Default"), interest on the United States Settlement Amount shall accrue at the rate of 12% per annum compounded daily from the date of Default on the unpaid amount (principal and interest balance).  Upon an Uncured Default, the United States, at its sole option, may: (i) offset the unpaid balance from any amounts due and owing to Gurevich by any department, agency, or agent of the United States at the time of Default; (ii) collect the entire unpaid balance of the United States Settlement Amount (subject to Paragraph 2), plus interest, including 12% interest from the date of Default, and all other amounts due upon the event of Default as specified in this paragraph; (iii) file a civil action for the Covered Conduct; (iv) exercise any other rights granted by law or in equity, including referral of this matter for private collection; or (v) exclude Gurevich from participating in all Federal health care programs pursuant to Paragraph 9, below, until Gurevich pays the United States Settlement Amount and State Settlement Amount, applicable interest, and reasonable costs as set forth in this Paragraph 3.  In the event a complaint is filed pursuant to subsection (iii) of this paragraph, Gurevich agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, res judicata, or similar theories to the allegations in the complaint, except to the extent such defenses were available to Gurevich on June 1, 2010.  Gurevich agrees not to contest any consent judgment, offset, recoupment, and/or collection action undertaken by the United States pursuant to this paragraph, either administratively or in any state or federal court, except that Gurevich shall not be precluded from asserting the affirmative defense of payment or miscomputation.  Gurevich shall

5

pay to the United States all reasonable costs of collection and enforcement under this paragraph, including attorneys' fees and expenses.

4.    The State Settlement Amount shall be paid as follows:

a.    No later than five (5) days after the Effective Date of this Agreement, Gurevich shall deliver by overnight mail a cashier's check in the amount of Sixty Thousand Dollars ($60,000), payable to: MFCU Restitution Fund, to the following address: New York State Attorney General, Medicaid Fraud Control Unit, Attn: Finance Department, 120 Broadway, 13th Floor, New York, New York 10271.

5.    In the event that Gurevich fails to pay the State Settlement Amount in full on or before the due date set forth in Paragraph 4 above, Gurevich shall be in default of this Agreement.  In the event of a default, the entire unpaid amount of the State Settlement Amount shall be immediately due and payable, and interest shall accrue on the remaining unpaid State Settlement Amount at a rate of nine percent per annum until the default is cured.  In the event of a default, the State will provide written notice of the default, to be sent by overnight delivery service to the undersigned attorney for Gurevich.  If the default is not cured within seven calendar days after the State sends notice of the default, the State may at its option declare or do any of the following:

a.    Reinstitute an action or actions against Gurevich, and any other person, in this court through the Civil Action or an amended pleading;

b.    Seek specific performance of the Agreement;

c.    Rescind its agreement to this Agreement and pursue all available remedies;

d.    Any dismissals agreed to by the State shall be null and void, and the State may declare the State Settlement Amount, referenced in Paragraph 2  above, less any payments already made, immediately due and payable, with unpaid amounts

6

bearing the default rate of interest of nine percent until payment of the State Settlement Amount plus said interest, is made in full;

e.  Offset the remaining unpaid balance of the State Settlement Amount from any amounts due and owing Gurevich by any department, agency or agent of the State at the time of Default, which Gurevich hereby agrees to and waives any administrative, judicial or other remedies; or

f.  Exercise any other rights granted by law, or under the terms of this Agreement, or recognizable at common law or in equity.

Acceptance by the State of late payment with interest shall not cure any other Default hereunder.

6.  In the event that the State seeks remedies for collection or enforcement of Gurevich's obligations hereunder, and the State substantially prevails in its collection or enforcement action, Gurevich shall be responsible for all costs and expenses incurred by the State in connection with that action.

7.  In the event the State opts to rescind this Agreement pursuant to Paragraph 5.c, Gurevich expressly agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims that relate to the Covered Conduct, except to the extent such defense was available on June 1, 2010.

8.  In the event the United States and/or the State reinstate an action concerning, or in the event of any criminal prosecution or administrative action relating to, the Covered Conduct, Gurevich further waives and will not assert any defenses he may have to any action relating to the Covered Conduct to the extent that such defenses may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the United States Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the United States Constitution, this Agreement bars a remedy sought in such action.  Nothing in this paragraph or any other

provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Total Medicaid Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

9.     Notwithstanding the foregoing, in the event of Uncured Default as defined in Paragraph 3, above, OIG-HHS may exclude Gurevich from participating in all Federal health care programs until Gurevich pays the remaining United States Settlement Amount and State Settlement Amount, applicable interest, and reasonable costs, as set forth in Paragraph 2, above.  OIG-HHS will provide written notice of any such exclusion to Gurevich.  Gurevich waives any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7), and agrees not to contest such exclusion either administratively or in any state or federal court. Reinstatement to program participation is not automatic.  If at the end of the period of exclusion Gurevich wishes to apply for reinstatement, Gurevich must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005.  Gurevich will not be reinstated unless and until OIG-HHS approves such request for reinstatement.

**RELEASES**

10.   Subject to the exceptions in Paragraph 11 below (concerning excluded claims), and conditioned upon Gurevich's full payment of the Total Medicaid Settlement Amount, the United States releases Gurevich from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; any statutory provision creating a cause of action for civil damages or civil penalties for which the Civil Division of the Department of Justice has actual and present authority to assert

8

and compromise pursuant to 28 C.F.R. Part O, Subpart I. 0.45(d), or the common law theories of payment by mistake, unjust enrichment, and fraud.

11.    Notwithstanding the release given in Paragraph 10 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

a.      Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b.      Any criminal liability;

c.      Except as explicitly stated in this Agreement, any administrative liability, including mandatory or permissive exclusion from Federal health care programs;

d.      Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.      Any liability based upon obligations created by this Agreement;

f.      Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

g.      Any liability for failure to deliver goods or services due; and

h.      Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

12. Subject to the exceptions in Paragraph 13 below (concerning excluded claims), in consideration of the obligations of Gurevich set forth in this Agreement, conditioned upon payment in full by Gurevich of the Total Medicaid Settlement Amount, and subject to Paragraph 25 below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), the State agrees to release Gurevich from any civil monetary claim for the Covered Conduct that the State has or may have against Gurevich under the New York False Claims Act, N.Y. State Fin. Law §§ 189 *et seq.*,

9

Executive Law § 63(12), Social Services Law § 145-b, or any other state law, or common law or equity, including equitable theories of payment by mistake, disgorgement, unjust enrichment, breach of contract, and fraud.

13. Notwithstanding any term of this Agreement, including the releases provided in Paragraph 12, above, specifically reserved and excluded from the scope and terms of this Agreement as to any entity or person are the following claims of the State:

  a. Any civil, criminal or administrative liability arising under New York Tax Law;

  b. Any civil liability that Gurevich have or may have under any state statute, regulation or rule not covered by this Agreement;

  c. Any criminal liability;

  d. Any administrative liability, including mandatory or permissive exclusion from the Medicaid program;

  e. Any liability to the State (or its agencies) for any conduct other than the Covered Conduct;

  f. Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

  g. Any liability for failure to deliver goods or services due;

  h. Any liability for personal or property damage or for other consequential damages arising from the covered conduct;

  i. Any patient abuse or neglect; and

  j. Any liability based on obligations created by this Agreement.

14. In consideration of the obligations of Gurevich set forth in this Agreement, conditioned

upon payment in full by Gurevich of the Total Medicaid Settlement Amount, Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, agrees to release Gurevich from any civil monetary claim the Relator has or may have for himself for the Covered Conduct against Gurevich or on behalf of the United States or the State under the federal False Claims Act, 31 U.S.C. §§ 3729-3733, or the New York False Claims Act, N.Y. State Fin Law §§ 189 *et seq.*

15.   Gurevich fully and finally releases the United States, the State, and their agencies, current and former employees, officers, servants and agents from any claims (including attorneys' fees, costs and expenses of every kind and however denominated) that Gurevich has asserted, could have asserted, or may assert in the future against the United States, the State, or their agencies, current and former employees, officers servants, and agents related to the matters arising from the Covered Conduct, the Civil Action, the Government Complaint, the MFCU Investigation and any prosecution thereof by the United States and the State, and this Agreement.

16.   In consideration of the obligations of the Relator set forth in this Agreement, Gurevich and his heirs, successors, attorneys, agents and assigns fully and finally releases Relator and his respective heirs, successors, attorneys, agents, and assigns from any claims that Gurevich has asserted, could have asserted, or may assert in the future against Relator and his heirs, successors, attorneys, agents and assigns related to the Covered Conduct, the Civil Action and Relator's investigation and prosecution thereof.

17.   Relator and his heirs, successors, attorneys, agents and assigns shall not object to this Agreement and agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B) and N.Y. State Fin. Law §190(5)(b)(ii) and, Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, fully and finally releases, waives, and forever discharges the United States and the State, their officers,

agents, and employees, from any claims arising from or relating to 31 U.S.C. §§ 3729-33, *et seq.* and N.Y. State Fin. Law §190, from any claims arising from the filing of the Civil Action, from any other claims for a share of the Total Medicaid Settlement Amount, and in full settlement of any claims Relator may have against the United States and the State under this Agreement. This Stipulation does not resolve nor in any manner affect any claims that the State has or may have against Relator arising under the State's tax laws, or any claims arising under this Agreement.

18.   Payments by the United States and the State to the Relator, as provided for by § 3730(d)(1) and N.Y. State Fin. Law §190(6)(a), are not included in this Agreement, and will be the subject of a separate agreement. The United States and the Relator have agreed on a Relator's share of the United States Settlement Amount of 17%; the State and the Relator have agreed on a Relator's share of the State Settlement Amount of 17%. Payments made to the Relator pursuant to § 3730(d)(1) and N.Y. State Fin. Law §190(6)(a) are contingent upon the United States and the State receiving the Settlement Amount payments set forth in Paragraphs 3 and 4 above. It is expressly understood and agreed that the United States and the State in no way promise, guarantee, nor are liable to Relator for the collection or payment of any funds pursuant to this Agreement or the payment of Relator's share except as provided herein for funds actually collected and received by the United States and the State. Contingent upon actual receipt of payments as set forth in Paragraphs 3 and 4, the United States and the State shall promptly inform Relator's counsel of such payment's receipt, and pay to Relator any agreed-upon Relator's share as soon as feasible after receipt, in accordance with payment instructions to be provided in writing by Relator's counsel.

**OTHER PROVISIONS**

19.  The Total Medicaid Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by Medicaid, or any state payor, related to the Covered Conduct.

20.    Gurevich agrees not to participate as a provider in any New York State-funded healthcare program, and shall execute any document and accept any notice required by any State regulatory agency to memorialize such disqualification.  Nothing in this Paragraph shall be construed to restrict the right of Gurevich to participate as a recipient in a New York State-funded or other government-funded healthcare program if otherwise eligible.

21.  This Agreement is intended to be for the benefit of the Parties to this Agreement only, and by this instrument the Parties to this Agreement do not release any claims against any other person or entity, except as expressly provided by this Agreement.

22.  Gurevich agrees that he waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

23.  Gurevich agrees that this Agreement is not punitive in purpose or effect.

24.    Gurevich expressly warrants that he has reviewed his financial situation and that he is currently solvent within the meaning of 11 U.S.C §§ 547(b)(3), and that he currently believes he will remain solvent following his payment to the United States and to the State of New York of the Total Medicaid Settlement Amount.  Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Gurevich,

13

within the meaning of 11 U.S.C. § 547(c) (1), and (b) have concluded that these mutual promises, covenants, and obligations do, in fact, constitute such contemporaneous exchange.  Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Gurevich was or became indebted to on after the date of this transfer, all within the meaning of 11 U.S.C. § 548(a) (1).

25.  If within ninety-one days of the Effective Date of this Agreement or of any payment made under this Agreement, Gurevich commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of Gurevich's debts, or seeking to adjudicate Gurevich as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for Gurevich or for all or any substantial part of Gurevich's assets, Gurevich agrees as follows:

  a. Gurevich shall provide the MFCU Special Deputy Attorney General immediate notice by hand delivery, express courier followed by postage-prepaid mail at the address contained in paragraph 43 herein.

  b. Gurevich's obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and Gurevich shall not argue or otherwise take the position in any such case, proceeding, or action that: (i) Gurevich's obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) Gurevich was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payments made to the United States or the State; or (iii) the mutual promises,

14

covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to Gurevich.

c.   If any of Gurevich's obligations hereunder are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the State, at its sole option, may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against Defendants for the claims that would otherwise be covered by the releases provided in Paragraphs 10 and 12, above.  Gurevich agrees that (i) any such claims, actions, or proceedings brought by the State are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this paragraph, and Gurevich shall not argue or otherwise contend that the State's claims, actions, or proceedings are subject to an automatic stay; (ii) Gurevich shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppels, or similar theories, to any such civil or administrative claims, actions, or proceedings that are brought by the State within sixty calendar days of written notification to Gurevich that the releases have been rescinded pursuant to this paragraph, except to the extent such defenses were available on June 1, 2010, and (iii) the State has a valid claim against Gurevich in an amount no less than $28,905,000, plus civil penalties to be determined by the Court, and the State may pursue its claim in the case, action or proceeding referenced in the first clause of this paragraph, as well as any other case, action or proceeding.

d.  Gurevich acknowledges that his agreement in this paragraph is provided in exchange for valuable consideration provided in this Agreement.

26.  Except as expressly provided to the contrary in this Agreement, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

27.  This Agreement is governed by the laws of the New York State without regard to choice of law or conflict of laws principles.  The Parties agree that the exclusive jurisdiction and venue for any dispute arising between and among the Parties under this Agreement will be the United States District Court for the Eastern District of New York. Notwithstanding the foregoing, the State does not waive any objection it may have that a claim against Gurevich for payment by the State is properly vested in the New York State Court of Claims.

28.  Any failure by the United States and/or State to insist upon the strict performance of any of the provisions of this Agreement shall not be deemed a waiver of any of the provisions hereof, and the United States and/or State, notwithstanding that failure, shall have the right thereafter to insist upon strict performance of any and all of the provisions of this Agreement.

29.  If any part of this Agreement shall for any reason be found or held invalid or unenforceable by any court of competent jurisdiction other than payment of the Total Medicaid Settlement Amount, such invalidity or unenforceability shall not affect the remainder of this Agreement, which shall survive and be construed as if such invalid or unenforceable part had not been contained herein.

30.  The terms of this Agreement shall remain effective notwithstanding the death or incapacity of any person, or any appeal, collateral attack, or any challenge to any criminal charge, conviction, plea or sentencing of any person, including but not limited, to the reversal,

16

modification, or dismissal of all or any portion of such charge, conviction, plea or sentence, or the charging, conviction, plea or sentencing of any other person.

31.     This Agreement constitutes the complete agreement between the Parties.   This Agreement may not be amended, changed, modified or waived except in writing signed by the Parties affected by said amendment, change or modification.

32.     Gurevich acknowledges and represents that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever and upon due deliberation with the advice of counsel.

33.     Relator acknowledges and represents that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever, and that the Relator has entered into this Agreement upon due deliberation with the advice of counsel.

34.     The undersigned counsel and other signatories represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

35.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.  Facsimiles and electronically transmitted versions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

36.     This Agreement is binding on Gurevich's successors, transferees, heirs and assigns.

37.     This Agreement is binding on Relator's successors, transferees, heirs and assigns.

38.     The captions in this Agreement are provided for reference only and are not operative terms of this Agreement.

39.     For purposes of construction, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

40.     Gurevich agrees not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any finding in this Agreement or creating the impression that this Agreement is without factual basis.  Nothing in this paragraph affects Gurevich's: (a) testimonial obligations; or (b) right to take legal or factual positions in defense of litigation or other legal proceedings to which the State is not a party.

41.     Once Gurevich has completed all payments required under this Agreement, with any applicable interest, the United States and the State shall file a Joint Notice of Dismissal in the Civil Action pursuant to Fed. R. Civ. P. 41(a) dismissing their claims for the Covered Conduct in the Government Complaint with prejudice.

42.     All payments to the State by check pursuant to this Agreement shall be made by cashier's check made payable to the MFCU Restitution Fund, and delivered by Overnight Mail to New York State Attorney General, Medicaid Fraud Control Unit, Attn: Finance Department, 120 Broadway, 13th Floor, New York, New York 10271.

43.     Any notices pursuant to this Agreement shall be in writing and shall, unless expressly provided otherwise herein, be given by overnight mail, and shall be addressed as follows:

**IF TO THE UNITED STATES:**

United States Attorney's Office
Eastern District of New York
c/o Elliot Schachner
271 Cadman Plaza East
Brooklyn, NY 11201

**IF TO THE ATTORNEY GENERAL and the STATE:**

New York State Attorney General
Medicaid Fraud Control Unit
Attn: Special Deputy Attorney General, Civil Enforcement Division
120 Broadway, 13th Floor
New York, New York 10271

**IF TO DEFENDANT MICHAEL GUREVICH:**

William G. Sullivan, Esq.
Clark Hill, PLC
130 East Randolph Street, Suite 3900
Chicago, IL 60601

**IF TO RELATOR:**

Alan Lebenbaum, Esq.
156 Beach 139th St.
Belle Harbor, NY 11694

44.   The Effective Date of this Agreement shall be the date of signature of the last signatory

to this Agreement ("Effective Date of this Agreement").


**MICHAEL GUREVICH**                                   Dated: January *19*, 2018


**APPROVED AS TO FORM:**

                                                        Dated: January *19*, 2018

William G. Sullivan, Esq.
Clark Hill, PLC
130 East Randolph Street, Suite 3900
Chicago, IL 60601

*Attorneys for Defendant Michael Gurevich*

**RICHARD P. DONOGHUE**
United States Attorney
Eastern District of New York
Attorney for United States
271 Cadman Plaza East
Brooklyn, New York 11201

By:  *[signature]*                                    Dated: January 23, 2018
     _____
     Elliot M. Schachner
     Assistant U.S. Attorney
     (718) 254-6053


*[signature]*                                         Dated: January 23, 2018
_____
Lisa M. Re
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services
(202) 205-9366


**ERIC T. SCHNEIDERMAN**
**ATTORNEY GENERAL OF THE STATE OF NEW YORK**
*Attorneys for the State of New York*

By:  *[signature]*                                    Dated: January 23, 2018
     _____
     Andrew Gropper
     Special Assistant Attorney General
     Medicaid Fraud Control Unit
     120 Broadway — Civil Unit
     New York, New York 10271-0007
     (212) 417-5395


                                                      Dated: January ___, 2018

_____
**MILAN NUS**
**Relator**

20

**RICHARD P. DONOGHUE**
United States Attorney
Eastern District of New York
Attorney for United States
271 Cadman Plaza East
Brooklyn, New York 11201

By: _____                    **Dated:** January ___, 2018
     Elliot M. Schachner
     Assistant U.S. Attorney
     (718) 254-6053


_____                        **Dated:** January ___, 2018
Lisa M. Re
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services
(202) 205-9366


**ERIC T. SCHNEIDERMAN**
**ATTORNEY GENERAL OF THE STATE OF NEW YORK**
*Attorneys for the State of New York*

By: _____                    **Dated:** January ___, 2018
     Andrew Gropper
     Special Assistant Attorney General
     Medicaid Fraud Control Unit
     120 Broadway – Civil Unit
     New York, New York 10271-0007
     (212) 417-5395


_____                        **Dated:** January 22, 2018
**MILAN NUS**
**Relator**

20

**APPROVED AS TO FORM:**

Dated: January 23, 2018

**Alan Lebenbaum, Esq.**
156 Beach 139th St
Belle Harbor, NY 11694
(917) 826-1371
*Attorney for Relator*

**SO ORDERED:**

Brooklyn, New York
January ___, 2018

_____
**THE HONORABLE STERLING JOHNSON, JR.**
**UNITED STATES DISTRICT JUDGE**

21